**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT PADUCAH**
**CIVIL ACTION NO. 5:13-CV-00058-LLK**

**CHRISTI E. TRAMBLE**                                                                                              **PLAINTIFF**

**v.**

**CAROLYN W. COLVIN**                                                                                            **DEFENDANT**
        Commissioner of Social Security

<u>**MEMORANDUM OPINION AND ORDER**</u>

Christi Tramble filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied her application for disability benefits. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.

Ms. Tramble asserts that the administrative law judge (ALJ) made several errors in her opinion, but primarily argues that the controlling vocational hypothetical was incomplete.

After reviewing the parties' fact and law summaries (docket nos. 9 and 11) and the administrative record, the Magistrate Judge concludes that the ALJ committed reversible error by not presenting a hypothetical that was complete in the sense that it reflected an adequate evaluation of Plaintiff's testimony and allegations regarding her limitations. The Magistrate Judge further concludes that this was not harmless error, and therefore REMANDS this matter to the Commissioner for a new credibility assessment and presentation of a new vocational hypothetical contemplating all of the credible limitations alleged by Plaintiff and supported by the record as a whole.

*Summary of the Evidence*

Plaintiff suffers from psoriatic arthritis, a chronic, episodic condition characterized by periods of alternating flare-up and remission.[1]

Plaintiff testified that her psoriatic arthritis results in all of the classic symptoms of swollen fingers and toes, foot pain, and lower back pain.  Approximately three to four times a month, her feet allegedly are so blistered and her toes so curled up with spasms that she cannot wear shoes and is reduced to rubbing her toes and feet.  AR, p. 46.  During these episodes she also has problems with her hips, fingers, and back.  AR, p. 46.  She has to sit down in a tub of hot water to ease the pain.  AR, p. 47.

In addition, Plaintiff's condition has resulted in loss of fingernails.  AR, p. 274.  At the administrative hearing, Plaintiff showed the ALJ how the arthritis "eats away at my fingernails ... kills my fingernails is what it does."  AR, p. 53.  When the ALJ asked whether this affects her grip, Plaintiff responded in the affirmative.

The vocational expert (VE) testified that an individual with the limitations described by Plaintiff would be unemployable.  AR, p. 63.

The ALJ denied Plaintiff's disability claim at the fifth and final step of the sequential evaluation process based upon a vocational hypothetical that contemplated the Medical Source Statement of Nicole Kershner, M.D.  AR, pp. 62-63   On July 17, 2010, Dr. Kershner examined Plaintiff at the request of the Commissioner and opined as follows (AR, p. 472):

*Medical Source Statement:*  The claimant can sit without any difficulties.  She can stand for 10 to 15 minutes and walk half a block before experiencing pain with her lower feet

---

[1] According to the Mayo Clinic web-site article on psoriatic arthritis (www.mayoclinic.com):

*Definition:*  Psoriatic arthritis is a form of arthritis that affects some people who have psoriasis — a condition that features red patches of skin topped with silvery scales. Most people develop psoriasis first and are later diagnosed with psoriatic arthritis, but the joint problems can sometimes begin before skin lesions appear.

Joint pain, stiffness and swelling are the main symptoms of psoriatic arthritis. They can affect any part of your body, including your fingertips and spine, and can range from relatively mild to severe. In both psoriasis and psoriatic arthritis, disease flares may alternate with periods of remission.

requiring her to rest. She has no lifting or carrying restrictions. She is able to drive and handle objects without difficulty. Fine motor skills are not impaired. Her communication, hearing, speaking, reasoning are not limited.

The ALJ gave "great weight" to Dr. Kershner's residual functional capacity (RFC) finding for sedentary work, which she found to be "consistent with the record when considered as a whole." AR, pp. 27 and 30.

However, Dr. Kershner herself observed that the examination of Plaintiff occurred during a period of relative remission of symptoms in which Plaintiff "[did] not appear to have any psoriatic lesions demonstrated today. She does have some cracking of the skin on her plantar feet, but no active blisters or weeping lesions are noted." AR, p. 471. Dr. Kershner found Plaintiff's gait and station to be "within normal limit" and stated that Plaintiff's "complaint was not supported at all on physical exam today." AR, pp. 471-472.

The ALJ discounted the possibility that, over time and notwithstanding the episodic nature of Plaintiff's impairment, Plaintiff will have greater vocationally-relevant limitations than identified by Dr. Kershner during a period of relative remission. The ALJ's rationale for discounting the presence of additional restrictions is that the record does not reflect the type of ongoing treatment one would expect if such additional limitations were present (AR, pp. 27 and 30):

> Although the examination was essentially normal, the undersigned recognizes the fact that the claimant has experienced exacerbations of her psoriatic arthritis which did give her restriction consistent with those set out by Dr. Kershner. ... The record shows that the claimant has experienced severe exacerbations of her psoriasis but does not have regular ongoing symptoms which require ongoing treatment. At times the claimant does not have any pustules on her hands or feet and does not experience any limitations. The record shows that she has not sought medical treatment on a regular basis for her psoriasis.

### Plaintiff's First Contention

Plaintiff's first contention is that "the Commissioner failed to pose a complete hypothetical question to the vocational expert." Docket No. 9, p. 6.

Plaintiff argues that the ALJ erred in declining to include in the hypothetical Dr. Kershner's suggestion, contained in the Summary and Recommendation portion of his narrative report, that Plaintiff is restricted to activities that do not require a lot of exertion and allow for frequent breaks:

> *Summary and Recommendation:* It does not appear that the claimant's claims caused impairment in her activities of daily living or comparable related activities. The claimant's complaint was not supported at all on physical exam today. She would likely be able to contribute her activities that do not require lot of exertion, allow for frequent breaks. I would also recommend weight loss, smoking cessation, and follow up. The claimant may also benefit from psych evaluation and treatment for anxiety.

(AR, p. 472)

The ALJ committed no reversible error regarding Plaintiff's need to avoid activities that require a lot of exertion as the VE testified that the sedentary jobs upon which the ALJ's denial decision was based do not require a lot of exertion. AR, p. 64.

Regarding Plaintiff's alleged need for "frequent" breaks, upon cross-examination by counsel, the VE testified that, if one defines "frequent" as occurring at least one-third of the workday, Plaintiff would be unemployable. AR, p. 65. Social Security Ruling (SSR) 83-10 defines "frequent" as that term is used in 20 C.F.R. § 404.1567(b)[2] to mean one-third to two-thirds of the time. However, the ALJ was not required to accept this definition of "frequent" and include it in the hypothetical because § 404.1567(b) has nothing to do with breaks. In addition, in context, it is apparent that Dr. Kershner did not intend to suggest that Plaintiff's breaks would be so frequent as to render her unemployable. On the contrary, Dr. Kershner found Plaintiff to be unimpaired in her "activities of daily living or comparable related activities." AR, p. 472.

### The ALJ's Credibility Assessment

Next, Plaintiff argues that the Commissioner failed to pose a complete hypothetical as the VE testified that Plaintiff would be unemployable if her testimony is accepted as fully credible. AR, p. 63.

---

[2] "Light work involves lifting no more than 20 pounds at a time with **frequent** *(emphasis added)* lifting or carrying of objects weight up to 10 pounds."

To be complete, an ALJ need only incorporate into a hypothetical question those limitations she finds to be credible. *Casey v. Secretary*, 987 F.2d 1230, 1235 (6th Cir.1993). Strictly speaking, the hypothetical was complete because the ALJ found Plaintiff's testimony to be credible only to the extent of the limitations contemplated by the prior hypothetical based on Dr. Kershner's Medical Source Statement.

However, implicitly, Plaintiff is questioning the ALJ's credibility assessment. As indicated above, the ALJ found Plaintiff's testimony of limitations in excess of those found by Dr. Kershner to be incredible because the record does not reflect the type of ongoing treatment one would expect if such additional restrictions were present (AR, pp. 27 and 30).

The foregoing credibility finding does not withstand judicial scrutiny as the record does reflect ongoing treatment or, at least, exhaustion of available treatment options, as well as ongoing exacerbation of symptoms.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir.1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* Nevertheless, an ALJ's credibility assessment must be supported by substantial evidence. *Id.* According to Social Security Ruling (SSR) 96-7p, the evidence supporting a credibility assessment is insubstantial if it is conclusory or lacks the specificity necessary for a meaningful judicial review:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and

must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well- reasoned determination or decision.

The record reflects ongoing treatment appropriate to Plaintiff's diagnosed psoriatic arthritis. Plaintiff's primary treatment provider was Ghassan Yazigi, M.D., Tri-Rivers Healthcare, Salem clinic. In May, 2007, she reported to Dr. Yazigi with bilateral feet breaking out with erythema (redness or rash), which Plaintiff reported "has been there for about 2 years and it will get better/worse." AR, p. 446. Dr. Yazigi prescribed Prednisone and indicated Plaintiff should see a dermatologist.

In July, 2007, Plaintiff reported to the WellSprings Institute that she suffers from a condition in which there is a rash on her feet and hands that starts as blisters, then scabs over. AR, p. 380. Evelyn Jones, M.D., prescribed Enbrel.[3] AR, pp. 263-264. The Enbrel apparently was of limited effectiveness as a Wellsprings notation from October, 2007, indicates that Plaintiff's "psoriasis [continued] flaring on Enbrel with increased stress." AR, p. 269.

In November, 2007, Dr. Yazigi noted that Plaintiff "has seen a dermatologist [Dr. Jones] who started giving her shots [Enbrel] which caused her hair to fall [out] so she quit." AR, p. 436.

In June, 2008, Plaintiff consulted with Paducah Dermatology. AR, p. 388. Halden Ford, M.D., diagnosed chronic plaque psoriasis of the palms and soles. AR, p. 387. He recounted Plaintiff's prior experience of hair loss with Enbrel and weight gain with steroids. He prescribed Humira. AR, pp. 283 and 296.

In October, 2008, Plaintiff reported to Paducah Dermatology with "multiple pustules with erythema [redness or rash], scale of the soles of the feet, and medial aspects of the feet and ankle

---

[3] According to mayoclinic.com, Enbrel (Etanercept) and Humira (Adalimumab) are tumor necrosis factor-alpha (TNF-alpha) inhibitors used to treat severe psoriatic arthritis. These drugs block the protein that causes inflammation.

regions.  The palms have a few resolving pustules of hyperpigmented macules."  AR, p. 303.  Humira was discontinued after 2 months due to "[n]o improvement on Humira."  AR, p. 303.

Plaintiff's treatment records at Tri-Rivers after October, 2008, and through March, 2010,[4] consistently report symptoms of "bilateral knee pain ... arthritis multiple joints ... significant for arthritic changes ... back pain ... significant for arthritic changes," etc., due to psoriatic arthritis.  AR, pp. 391-417.

The ALJ's reliance upon lack of treatment for discounting Plaintiff's testimony of disabling symptoms of swollen fingers and toes, foot pain, and lower back pain occurring three to four times a month (AR, pp. 46-47) provides an inadequate basis for meaningful judicial review of the ALJ's credibility assessment as required by SSR 96-7p.  In addition, the ALJ provided no rationale for accepting Dr. Kershner's finding that she can handle objects "without difficulty" (AR, p. 472) notwithstanding Plaintiff's testimony that the psoriasis "eats away at my fingernails" and affects her grip.  AR, p. 53.

A remand is required for a new credibility assessment and presentation of a new vocational hypothetical that is complete in the sense that it contemplates all of the credible limitations alleged by Plaintiff and supported by the record as a whole.

### Plaintiff's Second Contention

Plaintiff's remaining contentions are without merit.

Plaintiff's second contention is that the ALJ erred in declining to identify any severe mental impairment at step 2 of the sequential evaluation process.

The ALJ acknowledged that Plaintiff suffers from "medically determinable mental impairments of depression and anxiety."  AR, p. 28.  However, the ALJ found these impairments to be non-severe because they do not "cause more than minimal limitation in the claimant's ability to perform basic mental work activities."  AR, p. 28.

---

[4] Plaintiff has satisfied her obligation of submitting evidence relative to her disability status prior to the date she was last insured for Title II disability benefits, which was September 30, 2010.

In so findings, the ALJ accepted the opinion of the non-examining state agency program psychologist, H. Thompson Prout, Ph.D., of non-severe depression and anxiety (AR, p. 480) as "the most credible assessment of mental residual functional capacity" of record (AR, p. 28). Plaintiff has failed to point the Court to any contrary medical opinion of a severe mental impairment satisfying the 12-month duration requirement. The ALJ's second-step findings are supported by substantial evidence.

### *Plaintiff's Third Contention*

If a claimant shows that she suffers from a medical impairment satisfying the medical criteria of an impairment listed in Appendix 1 of the regulations (the so-called Listing of impairments), she is entitled to a conclusive presumption of disability based upon the medical evidence alone. Plaintiff's third and final contention is that she adequately established that her psoriatic arthritis satisfies the medical criteria of Listing 14.09A1 ("inflammatory arthritis").

Listing § 14.00D6(b) provides that psoriatic arthritis is evaluated under Listing 14.09A . Listing § 14.09A requires, among other things, evidence that the psoriatic arthritis results in inability to ambulate and/or to perform fine and gross movements effectively:

14.09 Inflammatory arthritis. As described in 14.00D6. With:

A. Persistent inflammation or persistent deformity of:

1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or

2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).

or ***

Plaintiff argues that her condition results in inability to ambulate effectively in light of the fact that, in June, 2008, Dr. Ford noted that Plaintiff "has disease, severe malform of feet that it makes difficult for her to walk." AR, p. 283.

Section 14.00C6 provides that the "[i]nability to ambulate effectively has the same meaning as in 1.00B2b." Section 1.00B2b, in turn, defines inability to ambulate effectively as an "an extreme limitation of the ability to walk," such as when a person needs to use a walker, two crutches, or two canes.

Plaintiff has failed to point the court to any medical opinion in the administrative record supporting a finding of extreme limitation of the ability to walk such as when a person need to use a walker, etc. On the contrary, in her application for benefits, she specifically declined to check the box indicating that she uses crutches, a walker, or a wheelchair. AR, p. 195.

**ORDER**

For the foregoing reasons, this matter is REMANDED to the Commissioner for a new credibility assessment and presentation of a new vocational hypothetical contemplating all of the credible limitations alleged by Plaintiff and supported by the record as a whole and for any further proceedings deemed necessary and appropriate by the Commissioner.